UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LEROY DAVIS, JR.,

       Petitioner,

v.

O'BELL WINN,

       Respondent.

_____/

Case No. 1:19-cv-324

Honorable Robert J. Jonker

## **OPINION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I. Background

Petitioner Leroy Davis, Jr. is incarcerated with the Michigan Department of Corrections at Saginaw County Correctional Facility (SRF) in Freeland, Michigan. Following a bench trial in the Kent County Circuit Court, the trial judge found him guilty, but mentally ill, of the crime of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84. On June 30, 2016, the court sentenced Petitioner as a habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 25 to 50 years.

Petitioner appealed that decision to the Michigan Court of Appeals and the Michigan Supreme Court, arguing that the evidence was insufficient to prove that he had the requisite intent to assault with intent to do great bodily harm. The Michigan Court of Appeals affirmed the conviction on November 16, 2017, and the Michigan Supreme Court denied leave to appeal on May 1, 2018.

Petitioner timely filed a petition under § 2254 raising the same argument that he raised on appeal. Specifically, he contends that "the evidence was not legally sufficient to prove beyond a reasonable doubt that [he] specifically i[nt]ended to do great bodily harm" and, thus, that the resulting conviction was "constitutionally defective." (Pet., ECF No. 1, PageID.4.)

### II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*,

3

135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Analysis

Petitioner challenges the sufficiency of the evidence to support the trial court's conclusion that he intended to inflict great bodily harm when assaulting the victim. The Michigan Court of Appeals described the facts in the case as follows:

> This case arises from an assault that occurred on a public bus in Grand Rapids, Michigan. Defendant, a passenger sitting in the back of the bus, moved to the front of the bus to exit and walked past the 69-year-old victim, who was sitting in the handicapped-seating area. Defendant had a small, sharp object in his hand. Upon approaching the victim, defendant swung and struck the victim one time in the neck near the jaw, resulting in a puncture wound about a centimeter from the victim's carotid artery and jugular vein. The attack was captured on video by cameras on the bus. After the assault, defendant exited the bus and jogged away. Later that day, defendant was apprehended by law enforcement. While being transported to jail, defendant told police that he "stabbed somebody."

*People v. Davis*, No. 334595, slip op. at 1 (Mich. Ct. App. Nov. 16, 2017).

According to Petitioner, the victim's injury was not serious, as it required only a "local anesthetic, draining the wound, and applying betadine and the bandage—all which took

4

about three minutes." (Pet., PageID.23.) In addition, Petitioner contends that his conduct did not reflect an intent to do great bodily harm. He inflicted only a single blow while walking from the back of the bus to the front. He did not stop to harass the victim. He did not say anything. The entire incident was "fast and fleeting." (*Id.*, PageID.24.)

The Michigan Court of appeals disagreed, stating:

> Following a bench trial, we review de novo a challenge to the sufficiency of the evidence. *People v Ventura*, 316 Mich App 671, 678; 894 NW2d 108 (2016). "The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Lanzo Const Co*, 272 Mich App 470, 474; 726 NW2d 746 (2006). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Id.*; see also MCR 2.613(C).
>
> To prove AWIGBH under MCL 750.84, the following elements must be established beyond a reasonable doubt: "(1) an attempt or offer with force or violence to do corporeal hurt to another (an assault), (2) coupled with an intent to do great bodily harm less than murder." *People v Lugo*, 214 Mich App 699, 710; 542 NW2d 921 (1995). "This Court has defined the intent to do great bodily harm as 'an intent to do serious injury of an aggravated nature.'" *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (citation omitted). Given the difficulty in proving an actor's intent, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 622. For example, intent to cause great bodily may be inferred from the defendant's conduct, the use of a weapon, and the nature of the injuries, if any, suffered by the victim. *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).
>
> In this case, in finding defendant guilty, but mentally ill, of AWIGBH, the trial court determined that defendant "forcefully and violently swung and struck the victim in the neck." This action resulted in a puncture wound to the victim's neck, from which the trial court determined that defendant used a sharp object as a weapon, though the exact weapon remained unknown. Emphasizing the proximity of the wound to the victim's carotid artery and jugular vein, the trial court concluded that the potential for harm to the victim was "quite dire." The victim's injury was serious enough that it required a pressure bandage to stop the bleeding and overnight hospitalization. Reasoning that great bodily injury, or even being killed, is a natural consequence of being stabbed in the neck and that defendant intended the consequences of his acts, the trial court concluded that, by inflicting a

> puncture wound to the victim's neck, defendant intended to cause great bodily harm.
>
> Given the deference due to the trial court's determinations regarding witness credibility and the weight of the evidence, there is clearly no merit to defendant's sufficiency claim. Viewing the evidence in a light most favorable to the prosecution, the evidence shows that defendant used a sharp object to stab the victim in the neck, in close proximity to the victim's carotid artery and jugular veins. While the weapon was never found, the trial court's conclusion that a sharp object was used was supported by testimony from the treating physician, who stated that it would be "extremely difficult for someone to strike someone hard enough to break the skin without a foreign body in his hand." The physician described the victim's wound as having "sharp, well-defined edges," that could have been caused by a key or a knife. Defendant also specifically told police that he "stabbed" someone. Additionally, as found by the trial court after watching the video of the attack, defendant "forcefully and violently swung and struck the victim." As discussed by the trial court, a natural consequence of "forcefully and violently" striking someone in the neck with a sharp object is at the very least great bodily harm. Indeed, the injury in this case was only centimeters away from hitting the carotid artery and the jugular vein, and, according to medical testimony, striking either the carotid artery or the jugular vein could easily have lethal consequences. The medical expert also explained that defendant came within a centimeter or two of striking a nerve that would have led to paralysis of the side of the victim's face. After the assault, rather than provide assistance to the injured and bleeding victim, defendant fled the scene, ran home, and changed his clothes. Considering all the evidence presented, particularly defendant's use of a sharp object to forcefully puncture the victim's neck, the evidence was sufficient to prove that defendant had the requisite intent to commit assault with intent to do great bodily harm less than murder. See *Stevens*, 306 Mich App at 629. Thus, the evidence was sufficient to support his conviction for AWIGBH.

*Davis*, No. 334595, slip op. at 1-2.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See*

*Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claim, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Petitioner has not surmounted the hurdle for relief. He does not challenge any of the factual determinations discussed by the Michigan Court of Appeals; thus, the Court presumes that the facts laid out by the Michigan Court of Appeals are correct. When discussing the facts, Petitioner focuses almost entirely on the ones that are most favorable to him, including the brevity of his conduct and the relatively minor nature of the injury. He utterly fails to mention the fact that he was holding a sharp object when he walked by the victim, and that he used this object to inflict a puncture wound to the victim's neck. Moreover, he does not mention that his blow landed within a centimeter or two of the victim's carotid artery, which means that the injury could have been life-threatening. Finally, he does not grapple with the fact that, under Michigan law,

7

"minimal" circumstantial evidence can suffice to prove a defendant's intent. Petitioner does not explain why the evidence is insufficient to meet this standard.

In short, Petitioner has failed to show that the state court's decision was unreasonable, and in light of the deference owed by this Court to the state court's decision, the Court concludes that Petitioner's claim is without merit. Furthermore, because Petitioner does not challenge any of the specific factual determinations made by the state court, the Court finds it unnecessary to review the underlying record before deciding his claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when

habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated:    May 15, 2019                      /s/ Robert J. Jonker                    
                                                              ROBERT J. JONKER
                                                              CHIEF UNITED STATES DISTRICT JUDGE